UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>1) Jose Luis VARGAS,<br>2) Jose Andres ZAMORA-Avila,<br>3) David Earl MITCHELL<br><br>Defendant(s) | Magistrate Case No. 08 MJ 1065<br><br>COMPLAINT FOR VIOLATION OF:<br><br>Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii)<br>Transportation of Illegal Aliens<br>Title 18, U.S.C., Sec.2 Aiding and Abetting<br><br>Title 8 U.S.C., Sec. 1324 (a)(2)(B)(iii)<br>Bringing in Illegal Aliens Without Presentation |

The undersigned complainant, being duly sworn, states:

### COUNT 1

On or about **April 4, 2008**, within the Southern District of California, defendant **Jose Luis VARGAS and David Earl MITCHELL** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Hilario VILLA-Salinas, Francisco Javier DE LA CRUZ-Hernandez, and Dagoberto MARES-Santamaria** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and Title 18, United States Code, Section 2.

### COUNT 2

On or about **April 4, 2008**, within the Southern District of California, defendant **Jose Andres ZAMORA-Avila**, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Hilario VILLA-Salinas, Francisco Javier DE LA CRUZ-Hernandez, and Dagoberto MARES-Santamaria**, had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 7th DAY OF **APRIL 2008.**

Ruben B. Brooks
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
1) Jose Luis VARGAS
2) Jose Andres ZAMORA-Avila
3) David Earl MITCHELL

## PROBABLE CAUSE STATEMENT

I declare under the penalty of perjury that the following statement is true and correct:

Furthermore, the complainant states that **Hilario VILLA-Salinas, Francisco Javier DE LA CRUZ-Hernandez,** and **Dagoberto MARES-Santamaria** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On April 4, 2008, Supervisory Border Patrol Agent M. Hansen and Senior Patrol Agents T. Engelhorn, J. Petras and J. Miranda of the San Diego Sector Smuggling Interdiction Group (SIG) were conducting anti-smuggling duties in Eastern San Diego County. Agent Hansen was in uniform and operating a marked Border Patrol pursuit sedan with fully functioning emergency lights and audible police siren. Agents Engelhorn, Petras and Miranda were in plainclothes and operating unmarked Border Patrol surveillance vehicles. Agents were targeting known alien smuggling staging areas in East County.

At approximately 1:30 AM, Agent Engelhorn surveyed the parking lot of Viejas Casino located in Alpine, California. The Viejas Casino is the first large 7/24 establishment west of the Interstate 8 immigration checkpoint. As such, alien smuggling organizations (ASO) frequently use this casino as a staging area before and during alien smuggling evolutions. SIG agents have recently learned through defendant interviews and personal observations that some smugglers tend to use the small northwestern most parking area as their staging area and they tend to park away form any other vehicles. This is contrary to legitimate casino goers who tend to find parking closer to the casino structure.

When Agent Engelhorn drove through this lot his attention was drawn to a grey 2008 Dodge Big Horn Ram pickup truck with shiny over-sized rims and low-profile tires parked away from all other vehicles in this lot. Agents have learned through their experience that larger vehicles, such as this truck, are preferred smuggling conveyances due to their increased cargo capacity. Agent Engelhorn contacted Border Patrol Radio Dispatch and requested a stolen vehicle/registered owner check on the Dodge referencing it's displayed California license plate. Dispatch soon informed Agent Engelhorn that the Dodge had not been reported stolen and that it was a rental vehicle.

The use of rental vehicles by ASO's is common, in that it affords them the ability to obtain newer vehicles so as to blend in with legitimate traffic and avoid incurring monetary losses to the Border Patrol's Asset Forfeitures Program by way of vehicle seizures. Based upon his observations Agent Engelhorn broadcast the description of this vehicle to other SIG agents as a possible load vehicle. This was one of several possible alien smuggling vehicles which SIG agents were watching for this evening.

At approximately 3:15 AM, Agent Hansen was departing the westbound I-8 Immigration Checkpoint by entering the eastbound lanes from the law enforcement turnaround adjacent to the primary inspection area. As Agent Hansen was waiting to merge into traffic, the same Dodge pickup truck Agent Engelhorn had seen at Viejas passed him. Agent Hansen confirmed that it was the same license plate as the one relayed by Agent Engelhorn. Agent Hansen observed that the Dodge continued eastbound past Buckman Springs Road.


**CONTINUATION OF COMPLAINT:**
1) Jose Luis VARGAS
2) Jose Andres ZAMORA-Avila
3) David Earl MITCHELL

SIG Agent Miranda was conducting stationary surveillance of the area overlooking the Old Highway 80 and Church Road intersection. This intersection is very active in terms of alien smuggling events due to its easy access from the interstate to the border area. SIG Agents have made numerous recent arrests of alien smuggling events by watching this intersection. On this evening, at approximately 3:00 AM, there was a seismic intrusion device activation indicating the presence of a group of illegal aliens walking a known smuggling trail which leads to Old Highway 80 east of Live Oak Springs.

At approximately 3:30, Agent Miranda observed a newer grey Dodge pickup with shiny rims proceed eastbound on Old Highway 80 towards Live Oak Springs from the direction of Interstate 8. Agent Miranda was unable to confirm that it was the same vehicle due to his distance from the intersection, but it matched exactly to the basic description provided by Agents Engelhorn and Hansen. Approximately ten minutes later Agent Miranda observed this same Dodge pickup truck traveling back westbound towards I-8. Agent Miranda relayed these observations to fellow SIG agents.

Agent Hansen positioned his marked Border Patrol vehicle near the westbound I-8 onramp and awaited the Dodge. Border Patrol Agent J. Harris from the Campo Station, also in a marked Border Patrol pursuit sedan joined Agent Hansen. The Dodge approached, and upon seeing the marked Border Patrol vehicles, entered I-8 westbound and proceeded to flee. Agents Hansen and Harris followed and observed that the Dodge was traveling approximately 105 miles per hour. Based upon the aforementioned observations and the actions of he driver, Agent Hansen believed that this vehicle was involved in smuggling activities and that the driver was actively fleeing from him.

Agent Hansen waited to attempt a vehicle stop on the Dodge in the hopes that agents to the west could get in place to deploy a controlled tire deflation device, but due to the Dodge's speed that was not possible. Agent Hansen requested backup from any agents in the area. All SIG agents responded, but they were unable to catch up due to the Dodge's speed. Agent Hansen pulled his sedan alongside the driver side of the Dodge and activated his passenger side alley light, fully illuminating the driver. Agent Hansen observed the driver, later positively identified as defendant #1 **Jose Luis VARGAS** form a distance of about 12 feet form approximately thirty seconds. VARGAS did not look at agent Hansen, but his staring straight ahead afforded Agent Hansen a good look at him.

Agent Hansen observed that VARGAS was a Hispanic male adult with short black hair an earring in his left ear and a hooded silver and black shirt with low hanging shoulder to sleeve seams. As the Dodge approached Kitchen Creek Road, Agent Hansen fell back anticipating that VARGAS might try to exit. VARGAS did exit at Kitchen Creek Road and continued down the off-ramp at high speeds. There was a semi tractor-trailer rig parked on the left shoulder of the off-ramp and due to the Dodge's speed, it nearly impacted the trailer. VARGAS corrected and avoided striking the trailer, but as he neared the bottom of the ramp the Dodge was already in a skid facing the vehicle northbound. VARGAS continued through the skid and proceeded northbound on Kitchen Creek Road accelerating heavily.

Kitchen Creek Road extends north from I-8 to Sunrise Highway. The road is mostly two-lane, with some stretches one-lane only leading up into the Laguna Mountains. After the first half mile, which is foothills, the road is banked, alternating between the west and east side. When the roadway is banked on the west, the east shoulder abuts deep rocky drop-offs. Due to the geography of the area, radio transmissions are mostly lost on most of the road. When the road is banked on the east, the west side is a drop-off.

CONTINUATION OF COMPLAINT:
1) Jose Luis VARGAS
2) Jose Andres ZAMORA-Avila
3) David Earl MITCHELL

The Dodge reached speeds of 100 miles per hour again on the short straightaway, but was forced to reduce his speeds to the sharp curves of the road. Agent Hansen, having extensive knowledge of this area, and having been on Kitchen Creek Road only hours before, knew that the campground was currently unoccupied and that the iron Forestry Service gate near the five mile marker was locked. At this time Agent Hansen activated his emergency lights and siren. VARGAS continued to evade and drove more recklessly. On several of the curves VARGAS took them in the on-coming lane. Most of the curves on Kitchen Creek Road are "blind" in that oncoming traffic can not be seen until the vehicles are in relatively close proximity. The driver took several of these blind curves in the on-coming lane.

Knowing that the roadway would soon end, Agent Hansen continued with the pursuit. During this pursuit on Kitchen Creek Road, the Dodge continuously kicked up rocks and sand from the road surface, which struck the front grill and windshield of Agent Hansen's sedan, indication that the rear wheels remained under a heavy acceleration throughout the pursuit. Once the Dodge passed the three mile marker, VARGAS attempted to flee over-land, taking the Dodge truck off-road over rough terrain in an apparent attempt to prevent pursuit. Agents Hansen and Harris stayed with the Dodge until it came upon the swollen creek, abutted with trees and boulders.

Having run out of room, the Dodge came to a stop. The Dodge's back-up lights illuminated. Agent Hansen, whose sedan came to rest within five feet of the Dodge, bailed out of his sedan anticipating that VARGAS intended to ram him. The Dodge did not move. As Agent Hansen got out, he observed VARGAS and front seat passenger, identified as defendant #2 **David Earl MITCHELL** scrambling over each other. Agent Hansen ran up to the passenger door, while Agent Harris ran to the driver door. All doors were locked, the motor was still running and the transmission was still engaged so Agents Hansen and Harris attempted to breach the Dodge by shattering the front windows.

After multiple attempts neither window would break. Agent Hansen drew his firearm and commanded VARGAS, now lying across the passenger seat, to unlock the door. VARGAS complied. Agent Hansen removed VARGAS from the vehicle by sliding him out and onto the ground on his stomach. Agent Hansen placed him in handcuffs and searched him for weapons. No weapons were found, but Agent Hansen did find a brown Motorola, Boost flip phone in his front left pocket. Agent Hansen seized this phone.

Agent Harris removed MITCHELL from the driver door and placed him on the ground, handcuffing and searching him. This search produced a black folding knife with a half serrated approximately 3 1/2 inch blade. The serrations of the blade were found to be very aggressive, measuring approximately 1/4 inch in depth. Agent Harris also found a multi-colored Nokia, Metro PCS cell phone adorned with marijuana plants in his pocket. This knife and phone were seized.

The bed of the Dodge contained one adult male Hispanic, whose arms and legs were splayed as though he was still trying to hang on. The rear seat of the Dodge was folded up and there were four male Hispanic subjects lying on the floor. All five of these individuals were wearing booties on their shoes. Booties are pieces of blanket which illegal aliens frequently place over their shoe tread in an effort to avoid leaving distinguishable foot impressions in the desert as they are illegally crossed into the United States from Mexico. These passengers were unloaded, questioned as to their citizenship and searched by Agents Englehorn, Miranda and Petras, who had arrived moments after the Dodge was stopped. One of the subjects from the rear of the Dodge's cab, identified as defendant #3 **Jose Andres ZAMORA-Avila** was found to be in possession of a grey Nokia phone.

**CONTINUATION OF COMPLAINT:**
1) Jose Luis VARGAS
2) Jose Andres ZAMORA-Avila
3) David Earl MITCHELL

Agents questioned each regarding their citizenship and immigration status. All five of these individuals admitted to being citizens and nationals of Mexico, illegally present in the United States. Four of them admitted that they were in the process of being smuggled into the United States, and had just illegally crossed the United States/Mexico border fence. Agents placed all five of these individuals under arrest and arranged for them to be transported to the El Cajon Border Patrol Station for processing. The Four smuggled illegal aliens, except ZAMORA were found to be relatives. ZAMORA was separated from the rest as a suspected principle smuggler. All three defendants identified at the scene were separated, transported, processed and interviewed separately. VARGAS and MITCHELL were also transported to the El Cajon Station for processing. Agents Hansen and Engelhorn processed the Dodge for seizure. A search of the Dodge produced a grey Motorola, Boost i-850 flip phone on the floorboard in front of the passenger seat. Agent Engelhorn seized this phone. American Towing was contacted, responded and took custody of the Dodge.

**DEFENDANT STATEMENT (Jose Luis VARGAS):**

The defendant was advised of his Miranda Rights and indicated that he understood his rights and did not ask for an attorney before providing the Agents with a statement. The defendant stated that he is a United States citizen.

VARGAS stated he is a citizen of the United States. VARGAS further stated he was not under the influence of alcohol or other narcotics. VARGAS admitted he was smuggling illegal aliens on this and prior occasions. VARGAS said he was going to be paid $100 per person to drive the illegal aliens to the rest area on Interstate 8 east of the U.S. Border Patrol Checkpoint. VARGAS said he made arrangements with a person he knows only as "Antonio". VARGAS said he has a seven month old daughter and needed to make money because he is unemployed. VARGAS said he met Antonio at a party approximately one month ago and Antonio asked VARGAS, if he wanted to drive for him. VARGAS agreed to the proposal.

VARGAS said he met Antonio at a gas station in Los Angeles on April 3, 2004 at approximately 10:30 PM and acquired a gray Dodge Ram 4x4. VARGAS said he and the subject David Mitchell, who is the boyfriend of his sister, drove the truck from there down to San Diego. When they arrived in San Diego, VARGAS said they drove east on Interstate 8 (I-8) until they arrived at the Crestwood exit near the Golden Acorn Casino. VARGAS said they drove down Old Highway 80 past the gas station at Live Oak Springs and picked up four individuals who were hiding off the side of the road. When the four persons got into the truck, VARGAS said he turned around and drove back towards I-8. When he entered the westbound lanes of I-8, VARGAS said he saw a marked Border Patrol sedan pull in behind him. VARGAS said he sped up to approximately 90 miles per hour in an attempt to elude the sedan. VARGAS said the sedan pulled up next to him and shined a flashlight on his face. At this point, VARGAS said he sped up to about 100 miles per hour. VARGAS said he knew the Border Patrol checkpoint was ahead so he exited Kitchen Creek Road and drove north in a further attempt to elude agents. VARGAS said he drove for a short period of time when he noticed the sedans emergency lights in his rearview mirror. VARGAS said he kept driving in an attempt to get away, but realized he wasn't going to escape so he stopped and attempted to move over to the passenger seat. VARGAS said he knew he was in trouble because he had been arrested for alien smuggling before. VARGAS said he knew Mitchell had never been arrested for alien smuggling so he thought if Mitchell were blamed for driving they would all be let go and VARGAS wouldn't get in trouble.

CONTINUATION OF COMPLAINT:
1) Jose Luis VARGAS
2) Jose Andres ZAMORA-Avila
3) David Earl MITCHELL

### DEFENDANT STATEMENT (Jose Andres ZAMORA-Avila):

The defendant was advised of his Miranda Rights and indicated that he understood his rights and did not ask for an attorney before providing the Agents with a statement. The defendant stated that he is a citizen and national of Mexico, illegally present in the United States.

ZAMORA admitted to having been arrested by Border Patrol on eleven prior occasions. ZAMORA denied working as a smuggler in the past. ZAMORA also denied smuggling on this event. Furthermore, ZAMORA said that a total of six subjects, including ZAMORA, crossed into the United States with him. One of the subjects was the foot-guide of the group who stayed behind after everyone got inside the pickup truck. According to ZAMORA, he planned on residing in Los Angeles, California in order to work.

### DEFENDANT STATEMENT (David Earl MITCHELL):

The defendant was advised of his Miranda Rights and indicated that he understood his rights and did not ask for an attorney before providing the Agents with a statement.

MITCHELL said that the driver of the Dodge is his girlfriend's brother. He said that his name is Luis, but he calls him Lou. He has known Luis for four or five months. He said Luis picked him up at his home, located in Los Angeles, California. Luis picked him up in the grey Dodge truck in which they were arrested this morning. He said Luis did not say anything about what they were doing; only telling him to come and roll with him. They drove west, stopping twice, once for gas and once they stopped for 35 to 40 minutes, but he does not know where that was. They drove west of the freeway, got off onto a side road where Luis did a U-Turn and stopped. When he stopped, a bunch of people came running up and got into the truck. Luis then took off again. Luis was driving fast and he asked him what was wrong. Luis told him someone was following them. Once Luis stopped the truck, he told MITCHELL to scoot over and they switched places inside the truck, which was when they were arrested. MITCHELL said he did not know any specifics of the process, but hoped to receive some money from Luis for going with him, because the rent is due.

### MATERIAL WITNESSES STATEMENTS:

Material Witnesses **Hilario VILLA-Salinas, Francisco Javier DE LA CRUZ-Hernandez,** and **Dagoberto MARES-Santamaria** stated that they are citizens and nationals of Mexico illegally present in the United States. They stated that they did not have any immigration documents allowing them to be in the United States legally. They stated that arrangements had been made in Baja California, Mexico to be smuggled into the United States. All the material witnesses stated that they were to pay between $1800.00 to $2,000.00 U.S. dollars to be smuggled to Los Angeles, California. All the material witnesses stated that a foot guide led them across the border. All the material witnesses stated that the foot guide took them to pre arraigned location where they told to wait for a pick up truck. All the material witnesses stated that the foot guide told them to get into the pick up truck. All the material witnesses stated that they feared for their lives when pick up truck tried to evade Border Patrol Agents. When shown a photographic lineup containing 7 individuals, all the material witnesses were able to identify ZAMORA as the foot guide and VARGAS as the driver. Material witnesses VILLA and MARES were able to identify MITCHELL as the front passenger in the pick up truck.

CONTINUATION OF COMPLAINT:
1) Jose Luis VARGAS
2) Jose Andres ZAMORZ-Avila
3) David Earl MITCHELL

Executed on April 5, 2008 at 9:00 am

_____
Carlos R. Chavez
Senior Patrol Agent

On the basis of the facts presented in the probable cause statement consisting of 5 page(s), I find probable cause to believe that the defendant named in this probable cause statement committed the offense on April 4, 2008, in violation of Title 8, United States Code, Section 1324 and Title 18, United States Code, Section 2.

_____      4-5-08 @ 11:24 a.m.
Peter C. Lewis                       Date/Time
United States Magistrate Judge